Jeffries Estate

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

The facts appear from the following adjudication of

LEFEVER, J., October 16, 1957.—This trust arises under item fourth of the will of Thomas J. Jeffries, who died February 23, 1922, whereby he bequeathed and devised his residuary estate unto his wife, Mary Dobson Jeffries, and The Pennsylvania Company for Insurances on Lives and Granting Annuities, trustees, in trust, inter alia, to pay two thirds of the net income to his said wife, for life, and the other one third (and after the death of the widow, the entire net income), to such of his descendants, per stirpes, as might be living at each distribution date until the death of the survivor of his (testator's) wife and three daughters, at which time the trust terminates and the principal is distributable to his (testator's) descendants, per stirpes, subject to certain limitations not now necessary to recite. . . .

The trustees have filed a partial account for the sole purpose of testing the propriety of the purchase by them of 10 shares of the common stock of E. I. du Pont de Nemours & Co., which they immediately sold at a loss to the estate of $25.18.

This court appointed Harold Cramer, Esq., trustee ad litem for unborn issue of testator's children, Amanda Jeffries Rosengarten and Florence Jeffries Armbruster, testator's grandson, Albert H. Rosengarten, and for any other unascertained parties in interest. Mr. Cramer has filed an able and comprehensive report in which he contends that the investment at issue was unauthorized under the terms of the will, and he, therefore, requests that the trustees be surcharged for the loss of $25.18.

The key provision of the will is paragraph 7(5), which authorizes the trustees: "To retain any investments which I may have made, and alter, vary, and change investments and reinvestments from time to time, without being confined to what are known as legal securities; *but they shall have no power to purchase shares of stock.*" (Italics supplied.)

It is conceded by the trustee ad litem that the trustees have exercised due care and prudence within the meaning of section 2 of the Fiduciaries Investment Act of May 26, 1949, P. L. 1828, in the investment and sale of the stock in question, and it is further conceded that the investments met all the requirements of section 9 of that act, as amended. In short, the trustees' investment in the common stock of E. I. du Pont de Nemours & Co. was a "legal investment" under the Fiduciaries Investment Act of 1949.

The question posed is whether the investment in a "legal" common stock is precluded by the quoted provision of the will in the instant case by the language of section 18 of the Fiduciaries Investment Act of 1949, which provides:

"The testator or settlor in the instrument establishing a trust may prescribe the powers, duties and liabilities of the fiduciary regarding the investment or noninvestment of principal and income and the acquisition, by purchase or otherwise, retention, and disposition, by sale or otherwise, of any property which, at any time or by reason of any circumstance, shall come into his control; and *whenever any such provision shall conflict with this act, such provision shall control notwithstanding this act. In the absence, however, of an express restriction to the contrary in the trust instrument, the fiduciary may invest in any investment authorized by this act.*" (Italics supplied.)

Is the language of testator, "but they shall have no power to purchase shares of stock", such "an express restriction to the contrary in the trust instrument"?

This question has not been passed upon by the appellate courts of Pennsylvania. However, there have been a number of lower court decisions interpreting section 18 of the Fiduciaries Investment Act of 1949. The cases divide themselves into two categories. The first deals with investment clauses giving trustees power to invest in certain specified investments or classes of investments. The courts have uniformly held that such powers merely enumerated the form of investment which testator or settlor preferred or suggested, but did not by express restriction prohibit other investments, particularly those specified by act of the legislature to be "legal investments".

Illustrations of such investment clauses follow. In Rouse Estate, 1 Fiduc. Rep. 514 (1951), testator authorized and empowered his trustees " 'to invest in bonds secured by first mortgages upon real estate in the City of Philadelphia, bonds of the United States, State of Pennsylvania and of the City of Philadelphia, or in first class railroad (both steam and electric) bonds, or preferred or common stock of railroad companies (both steam and electric), or in preferred stock of locomotive works . . . or gas or electric companies, and in all said investments or changes thereof, long-term investments are to be preferred' ".

In Close Estate, 83 D. & C. 136 (1953), the investment clause of the will provided that trustees " 'shall invest and reinvest the funds which may at any time come into their hands in well secured first Mortgages secured on real estate in the City of Philadelphia or in well secured Ground Rents issuing out of Real Estate in said City or in Two story brick houses clear of encumbrance in good localities in said City or in Bonds of the United States, State of Pennsylvania or the City of Philadelphia' ".

In Brown Estate, 85 D. & C. 452 (1953), the trustees were empowered " 'to invest and reinvest in mort-

gages which are a first lien on real estate in Pennsylvania and New York, in the first mortgage bonds of dividend paying railroads, in car trust or equipment trust certificates of dividend paying railroads, in United States loans, in the loans of the State of Pennsylvania and the State of New York, in loans of municipalities, township, school districts and similar public divisions in the State of Pennsylvania, and in ground rents in the City of Philadelphia . . .' ".

In Myers Estate, 85 D. & C. 425 (1953), the trustees were authorized to "promptly reinvest the money derived therefrom in tax free covenant securities of the character composing the present fund . . .".

In Neafie Estate, 5 Fiduc. Rep. 291 (1955), the trustee was empowered to invest " 'in the bonds and loans of the United States of America, the State of Pennsylvania, the City of Philadelphia, or in bonds and first mortgages covering improved, unencumbered real estate situate in the City of Philadelphia' ".

In Middleton Estate (No. 2), 8 D. & C. 2d 133 (1955), the trustee was empowered to invest " 'in bonds of the state of Pennsylvania, in bonds of the Government of the United States, or in bonds and mortgages which shall be first liens upon real estate situate between Spruce Street, Girard Avenue, Twentieth Street, and Fifth Street in the City of Philadelphia in the State of Pennsylvania . . .' ".

In each of the foregoing cases the trustee invested in an investment other than the investments enumerated in the trust instrument but which was "legal" under the Fiduciaries Investment Act of 1949. In each case the court held that such investments were proper and valid and that the language prescribing the investments did not constitute "an express restriction to the contrary in the trust instrument" specified in section 18 of the Fiduciaries Investment Act of 1949.

The other category of cases is that in which the trust instrument purports to give the trustee power to go beyond investments authorized by law, but by other provisions cuts down the power so given. Illustrations of such situations are Smith Trust, 2 Fiduc. Rep. 393 (1952), which provided that the trustees had the power to invest " 'without being confined to those classes of securities which may be designated by law as legal investments for trustees, except that the Trustees shall confine their investments and reinvestments to bonds or equivalent classes of securities . . .' ".

In Woolston Trust, 4 Fiduc. Rep. 141 (1953), the trustee was empowered to invest at discretion not being confined to what are known as " ' "legal investments" ' " provided " 'that they make no new investments in shares of corporations' ".

In Wayne Trust, 4 Fiduc. Rep. 100 (1954), the power was " 'to change any and all investments from time to time, and to reinvest at her discretion; confining, however, such investments and reinvestments to good real estate securities' ".

In Shannon Trust, 4 Fiduc. Rep. 554 (1954), the investment power was " '. . . to invest and reinvest . . . in good interest bearing securities, other than stock of corporations, with power to alter and change . . . without requiring my said Trustees to invest said fund in what are termed "legal securities" . . .' ".

In Dunn Estate, 5 Fiduc. Rep. 169 (1955), the investment power was " 'to keep the same invested upon securities satisfactory to them, such as well secured railroad bonds, without restrictions to legal investments, but not stock other than such stocks as may be among my assets at my death . . .' ".

In White Estate, 5 Fiduc. Rep. 503 (1955), the will directed that trustee "shall not be confined in making investments to what are known as 'legal investments

. . . it being my intention that the trustees shall exercise their best discretion with no other restrictions saving that they shall not purchase shares of corporation stock except to protect shares of stock by me owned at the time of my decease' ".

Finally, in Tower Estate, 87 D. & C. 447 (1954), the trustees were empowered " '. . . to invest and keep invested the same and every part of the capital thereof so as to make the same as productive as reasonably can be . . . hereby directing them to preserve such investments and securities as I shall leave . . . so long as they . . . deem prudent, and making such new investments as they in their best judgment and discretion shall deem advisable and advantageous to my Estate without confining themselves to such investments as the law directs for the investment of trust funds, hereby allowing them full power to select any investments or securities they may approve except the Capital Stocks of Corporations and obligations not accompanied with reasonable securities . . .' ".

In each of these cases the court approved the investment in common stocks which were legal under the Fiduciaries Investment Act of 1949. The rationale was that prohibitions and limitations on investment powers that give the authority to invest in "nonlegal" investments, are limitations only upon the "nonlegal" investments, and that the trustee has, without the necessity of express statement, full authority to invest in other investments approved for fiduciaries, i. e., legal investments.

There is little doubt that the first class of cases above cited is no precedent for the validity of the investment in the instant case. In each of the cited cases testator or settlor prescribed certain investments, but did not expressly prohibit other investments. The second class of cases is much closer to the

instant case. The proper rule seems to be that laid down by President Judge Klein, as auditing judge, in Smith Trust, supra, at page 398: ". . . the right of trustees to invest in securities approved by the Legislature should not be denied them, except in cases in which the trust instrument contains an express prohibition in the clearest language. . . .", and by Judge Saylor for the Philadelphia Orphans' Court en banc, in Tower Estate, supra, at page 453: "It is clear that under the Act of 1949 there must be 'an express restriction' imposed by a testator upon the investment by a trustee in any particular type of security listed in the act if the trustee is to be denied the power given by the legislature to make such investment." It would seem that the language used in the instant case is such clear language, namely, "but they shall have no power to purchase shares of stock". This is positive, direct, mandatory and unequivocal language. There is no limitation on the language. There is no indication that the restriction is limited to "nonlegal" investments.

The auditing judge is conscious of the current, ever-expanding inflation. It is common knowledge that the purchasing power of the dollar has decreased approximately 50 percent in the past 15 years. In those years investments in bonds or other fixed-value securities have depreciated in purchasing power, whereas investments in equities, namely, in common stocks and in certain preferred stocks have at least kept pace with the purchasing power of the dollar, and in certain instances have outrun it. However, the auditing judge also takes note of the current decline in the stock market, and the views of certain economists that stocks may reach even lower levels. Irrespective of the economic aspects of the case, it is the right of a testator or settlor to prescribe what kind of investments he wishes, so long as they do not violate

public policy. This was the intention of the legislature, as appears from the express language of section 18 of the Fiduciaries Investment Act of 1949, and the comment of the commissioners with respect to it.

The language in the instant will, whether examined by the legalistic mind of a lawyer or by the eye of a layman, prohibits the purchase of any shares of stock, whether "legal" or "nonlegal". It is a well recognized rhetorical rule that that which stands at the beginning or end of a passage is by its position endowed with a certain strength and emphasis. Testator apparently had a settled conviction against the purchase of stock by his trustees. He reserved the expression of that conviction for the very last portion of his investment powers. Hence the crucial language stands out boldly as his final and unalterable direction. If this language does not constitute "an express restriction to the contrary", it is difficult to visualize language that does so restrict.

Many of the cases which allow the powers to the trustees to invest in all legal list investments rest upon the basis of ambiguity in the language of the powers granted by the trust instrument. However, there is nothing ambiguous about the critical language here, "but they shall have no power to purchase shares of stock". When such mandatory language is used it is to be followed: Bogert, Trusts and Trustees, sec. 681. As was stated in Wayne Trust, supra, at page 102: "At this point it is pertinent to consider what kind of provision a will must contain in order to supersede the statutory investment authority granted by §41. The answer is a mandatory provision. A permissive provision is not enough. The applicable rule is stated in *Restatement, Trusts,* §227, comment t: '*Permissive or mandatory terms of the trust.* The terms of the trust as to investments may be either permissive or mandatory; that is, the trustee may be merely au-

thorized or he may be directed to invest in certain securities or kinds of securities. If he is merely authorized to make certain investments, he has a privilege but not a duty to make such investments; if he is directed to make such investments, he has not merely a privilege but a duty to do so'."

The auditing judge, therefore, holds that the questioned provision prohibits the investments in common stock. Therefore, irrespective of the fact that the investment here made was a "legal investment", permitted generally to trustees under the Fiduciaries Investment Act of 1949, and the further fact that the stock of E. I. du Pont de Nemours & Co., is a highly considered investment, a so-called "blue chip" on the stock exchanges, nonetheless this investment was prohibited by the express language of testator.

Trustees derive their power to make investments (a) from the specific terms of the trust instrument, or (b) from statutory authorization. See Middleton Estate, supra, 8 D. & C. 2d 133. In the instant will the power created by the trust provision enlarges the powers authorized by law, but with an explicit single exception. *The trustees may not invest in shares of stock even if they be a legal investment.* The trustees in the instant case have breached their fiduciary duty. They have failed to follow the clear mandate of testator *not* to purchase shares of stock. Hence, the trustees are surchargeable for the loss sustained by this investment.

Accordingly, the balance shown by the instant partial account, to wit, $1,928.38, to which add the amount of surcharge as aforesaid, $25.18, less the amount of the fee to the trustee ad litem to be fixed at the conclusion of this litigation, is awarded back to the accountants as trustees for the uses and purposes of the continuing trust as declared by the will of testator, subject to what has been hereinabove de-

fined and set forth concerning the powers of investment of the trustee.

There were four cases on the audit lists of Judge Shoyer and me involving substantially the same question, namely, the instant case and the Estate of B. Frank Clyde, October term, 1906, no. 332, on my list, and the Estate of A. Warren Kelsey, settlor, no. 3256 of 1933, and the Estate of Emily M. Saunders, deceased, no. 1573 of 1953, on Judge Shoyer's list. Guardians and trustees ad litem were appointed in each case. In view of the similarity of the problems involved, Judge Shoyer and I sat together and heard argument by counsel for the accountants, counsel for other interested parties and the ad litems, and we have collaborated in preparing the adjudications, although the adjudication in each case is that of the individual auditing judge.

And now, to wit, October 16, 1957, the account is confirmed nisi.

*Robert T. McCracken*, for the exceptions.

*Harold Cramer*, trustee ad litem, contra.

### Opinion Sur Exceptions

SAYLOR, J., December 6, 1957.—The trustees of a testamentary trust established in 1922 were surcharged for a loss sustained in the sale of shares of common stock purchased by them in 1956. The auditing judge held that the trustees had breached their fiduciary duty in making the investment because the investment powers given by testator contained a clear mandate not to purchase shares of stock.

The trustees were empowered, inter alia, by testator "to retain any investments which I may have made, and to alter, vary and change investments and reinvestments from time to time, without being confined to what are known as legal securities, but they shall have no power to purchase shares of stock".

The guardian and trustee ad litem, representing minor remaindermen and future interests, contended that this prohibition was effective against all shares of stock whether or not they were legal investments for trust funds. The trustees relied upon the language of the act of legislature for their authority in using trust principal to purchase "legal investments".

Section 18 of the Fiduciaries Investment Act of May 26, 1949, P. L. 1828, 20 PS §821.18, provides:

"The testator or settlor in the instrument establishing a trust may prescribe the powers, duties and liabilities of the fiduciary regarding the investment or noninvestment of principal and income and the acquisition, by purchase or otherwise, . . . of any property which, at any time or by reason of any circumstance, shall come into his control; and whenever any such provision shall conflict with this act, such provision shall control notwithstanding this act. In the absence, however, of an express restriction to the contrary in the trust instrument, the fiduciary may invest in any investment authorized by this act."

Section 9 of this act was amended to enlarge the field of investment by including shares of common stock of corporations maintaining various financial standards. One such was the E. I. du Pont de Nemours & Co., shares of which corporation are involved in this case.

The matter to be decided here is simply this: Do testator's words, "but they shall have no power to purchase shares of stock", constitute such "express restriction to the contrary in the trust instrument" as the act requires if its benefits are to be denied to a fiduciary?

This and other courts of the Commonwealth have had occasion to interpret the language of numerous trust instruments in the light of the Fiduciaries Investment Act. The cases decided in recent years may

be divided into two general classes: Those where settlor or testator designated the types of investment he preferred; and those where he authorized investments of a nonlegal character while at the same time limiting or curtailing the field thereof.

The first class of cases involves instances where ambiguity of language requires interpretation. They include: Rouse Estate, 1 Fiduc. Rep. 514 (1951); Close Estate, 83 D. & C. 136 (1953); Brown Estate, 85 D. & C. 452 (1953); Myers Estate, 85 D. & C. 425 (1953); Frazier Trust, 3 Fiduc. Rep. 399 (1953); Neafie Estate, 5 Fiduc. Rep. 291 (1955); and Middleton Estate (No. 2), 8 D. & C. 2d 133 (1955).

In Neafie Estate, supra, Judge Hunter of this court stated:

"A direction to invest in certain enumerated investments is not equivalent to an express restriction from investing in legal investments authorized by the Investment Act. When a testator authorizes, or empowers, or directs his trustee to invest in certain enumerated investments, he does not thereby deprive the trustee of the statutory power of investment conferred by the statute, but rather adds to such authorized investments those specifically enumerated in the trust instrument."

Conversely, in the second class of cases it has been held that testators in using restrictive words did not necessarily deprive their trustees of the powers given them by legislative act, but rather restricted them in the field of investment authorized beyond the area of "legal investment".

These cases are: Smith Trust, 2 Fiduc. Rep. 393 (1952); Wayne Trust, 4 Fiduc. Rep. 100 (1954); Woolston Trust, 4 Fiduc. Rep. 141 (1953); Shannon Trust, 4 Fiduc. Rep. 554 (1954); Dunn Estate, 5 Fiduc. Rep. 169 (1955); White Estate, 5 Fiduc. Rep. 503 (1955), and Tower Estate, 87 D. & C. 447 (1954).

All of these cases were decided by the judges of this court. In none of them did the court have any difficulty in deciding that settlor did not "intend to restrict the trustees in such manner that they could not even invest in approved types of legal investments", in the words of President Judge Klein in Smith Trust, supra, page 398, who added:

"The Auditing Judge is strongly of the opinion that the right of trustees to invest in securities approved by the Legislature should not be denied them, except in cases in which the trust instrument contains an express prohibition in the clearest language."

There is no need to review the facts in these decisions, many of which involved the effect of a prohibition on investment in corporate stocks. Suffice it to say, it has been the uniform ruling of this court that to impose an effective bar on the purchase of a so-called "legal investment" the trust instrument must contain language that unambiguously constitutes an "express restriction" on the power given by the act.

Is the situation any different in the instant case?

The auditing judge said testator used "positive, direct, mandatory and unequivocal language" and that there is no limitation on it. With that we agree. But when he says: "There is no indication that the restriction is limited to 'nonlegal' investments", we disagree.

Testator executed his will in 1922 when legal investments did not include corporate stocks. Very properly, in enlarging the power of investment beyond that then given by law, he chose to place some restrictions upon it. He took corporate stocks out of the field of "nonlegal" investments in which otherwise he gave his trustees the power to invest.

He did not, as the guardian and trustee ad litem contends, authorize his trustees to make legal and nonlegal investments except for shares of stock. He said

nothing about legal investments. Unless he specifically curtailed the power to make such investments, the trustees possessed such power. The restriction imposed was upon the exercise of the power given them in addition to that they had by right under law.

It is a fact agreed upon that the du Pont stock is a legal investment and that the trustees exercised due care and prudence in purchasing it within the meaning of section 2 of the Fiduciaries Investment Act. Hence the court must seek language that restricts more than the powers granted by testator.

The approach to the determination of whether testator has curbed by clear, unambiguous language the power otherwise to be enjoyed and exercised by his trustees should be: "Is there any indication that the restriction is directed to legal investments?" As corporate stock was not a legal investment in 1922, obviously testator could have had in mind only "nonlegal" investments when he imposed the restriction, at least to the extent that corporate stocks were concerned.

Testator could have added to the clause relating to stocks the words "whether or not they be legal investments", or could have said: "The power to make investments authorized by law is hereby curtailed to exclude at all times the power to invest in common stocks", or "The only investment powers to be enjoyed by the trustees are those hereby specifically given and they shall not make any other investments whether or not authorized by any law now or hereafter in effect".

Or he could have used other language of similar import effectively barring the trustees from reliance on the Fiduciaries Investment Act. In our opinion he did not do so.

There is before us no clear, unambiguous language, directed against the purchase of so-called "legal" investments and hence no "express restriction" imposed

such as the act requires. We conclude that the auditing judge committed error in surcharging the trustees.

We rule that in purchasing the du Pont stock the trustees were entitled to rely upon the authority and protection given them by the Fiduciaries Investment Act of 1949, as amended to date and then in force. Section 22 of the act reads:

"The provisions of this act shall become effective upon final enactment. . . ."

There has never been any question that its terms apply to estates and trusts in existence before its passage. In Wood's Estate, 130 Pa. Superior Ct. 397, 403, it was held:

"The propriety of an investment must be determined as it appeared at the time of the investment." See Glauser Estate, 350 Pa. 192, 202 (1944).

We find that testator imposed upon his trustees no restrictions on the purchase of investments authorized by the Fiduciaries Investment Act, and we sustain the exceptions filed by the trustees.

However, as the issue here involved has not yet been determined by the Supreme Court of Pennsylvania, we instruct the trustee ad litem to file with that court a timely appeal from this decision.

Lefever and Shoyer, JJ., dissent.